IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   v.             11-CR-257-A

LORI MACAKANJA,

     Defendant.



## PLEA AGREEMENT

  The defendant, LORI MACAKANJA, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

## I. THE PLEA AND POSSIBLE SENTENCE

  1. The defendant agrees to waive indictment and to plead guilty to a two Count Information charging:

  a) in Count I, a violation of Title 18, United States Code, Section 1341 [mail fraud], for which the maximum possible sentence is a term of imprisonment of 20 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of three years; and

  b) in Count II, a violation of Title 18, United States Code, Section 641 (Theft of Government Money), for which the maximum possible sentence is a term of imprisonment of ten years, a fine of $250,000, a mandatory $100.00 special assessment, and a term of supervised release of three years.

c)    The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.    The defendant understands that, as to Count I of the Information, the Court must require restitution in the amount of $296,639.07 to be paid to the victims, pursuant to Sentencing Guidelines Section 5E1.1 and Title 18, United States Code, Section 3663A.

3.    The defendant understands that, as to Count II of the Information, the Court must require restitution in the amount of $2,000.00 to be paid to the United States Housing and Urban Development Agency (HUD), pursuant to Sentencing Guidelines Section 5E1.1 and Title 18, United States Code, Section 3663A.

4.    The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to two years without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving

a sentence of imprisonment longer than the statutory maximum set forth in Paragraph 1 of this agreement.

## II.   ELEMENTS AND FACTUAL BASIS

5.   The defendant understands the nature of the offenses set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

**Count I (Title 18, United States Code, Section 1341)**

First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations or promises;

Second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

Third, that in execution of that scheme, the defendant used or caused the use of the mails or private carrier.

**Count II (Title 18, United States Code, Section 641)**

First, that the defendant converted Housing and Urban Development (HUD) money to her own use;

Second, that the HUD monies were money of the United States;

Third, that the defendant acted knowingly; and

Fourth, that the value of the property converted exceeded the sum of $1,000.00.

## FACTUAL BASIS

6.   The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a.   At all times relevant, the defendant, Lori Macakanja, was a housing counselor employed by Homefront. Homefront, a non-profit housing counseling agency, was a HUD approved housing counseling agency in Western New York.   HUD approval meant that the agency had met the qualifications and conditions prescribed by HUD and that the agency received government funding to provide foreclosure prevention services.

b.   As a housing counselor for Homefront, Macakanja routinely met face-to-face, spoke over the telephone, and communicated by mail and email with individuals in default on their mortgage payments.   Those clients provided Macakanja with financial documents, and details regarding the circumstances which led to the default.   Macakanja's clients usually experienced a hardship, such as job loss, divorce, illness, disability, which led to their inability to pay their mortgage.

c.   As a housing counselor for Homefront, Macakanja also applied for Owners Avoiding Homelessness Program (OAH) funds, through the Buffalo Urban Renewal Agency (BURA), a HUD program reserved for low to moderate income homeowners, and provided up to $1,000 to homeowners who demonstrated a documented hardship, and were in danger of default or foreclosure.

d.   On or about March 2, 2010, T.R. was sent a summons and complaint related to the foreclosure of her home.   On or about March 23, 2010, T.R. received a postcard in the U.S. Mail advertising Homefront's home ownership counseling services. Shortly thereafter, T.R. called Homefront and spoke with Macakanja who

instructed T.R. to bring $2,000 to her initial consultation.

e.   On April 5, 2010, T.R. met with Macakanja. On this same date, T.R. provided Macakanja with two Bank of America money orders, in the amount of $1,000.00 each.   T.R. understood from Macakanja that the money orders she provided were to be used to obtain a loan modification of T.R.'s mortgage.

f.   On April 6, 2010, Macakanja negotiated the money orders provided to her by T.R. at Lake Shore Savings Bank, depositing the money orders into her personal savings account and not towards T.R.'s mortgage loan modification.

g.   On June 28, 2010, Macakanja prepared BURA funding request documentation, on behalf of T.R., for BURA rescue funding, as described above.   In the request documentation, Macakanja made false statements that T.R. had attended the required Financial Fitness Workshop, when T.R. had not.   Further, Macakanja created a false Certificate of Achievement, dated February 18, 2010, a date before T.R.'s initial meeting with Macakanja, in support of that false representation. As a result, Homefront issued a check for $1,000.00, drawn on Homefront's M&T Trust Company checking account, made payable to Bank of America, for the purpose of assisting T.R., as part of the HUD OAH program.

h.   On or about July 12, 2010, Macakanja mailed or cause to be mailed, to Bank of America, a package of which the contents were a HomeFront check number in the amount of $1,000.00 intended to be applied to T.R.'s mortgage. However, instead of listing T.R.'s mortgage loan number on the Homefront check, Macakanja placed her own mortgage loan number on the check, which thereby caused the money to be applied to the mortgage on Macakanja's personal residence located in Dunkirk, New York, and not to T.R.'s mortgage.

i.   On October 29, 2010, Macakanja admitted she
     took money from T.R. and other clients of
     Homefront, including HUD funds, and used them
     for her own personal use.


### III.   SENTENCING GUIDELINES

7.   The defendant understands that the Court must consider but

is not bound by the Sentencing Guidelines (Sentencing Reform Act of

1984).


### BASE OFFENSE LEVEL

8.   The government and the defendant agree that Guidelines

§ 2B1.1(a)(1) applies to the offense of conviction and provides for

a base offense level of 7.


### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

9.   The government and the defendant agree that the following

specific offense characteristics do apply:

a.   § 2B1.1(b)(1)(G):  the   total   loss
     (including   relevant   conduct)   was   in
     excess of $200,000 (namely, $296,639.07)
     and thus there is a 12 offense level
     increase.

b.   § 2B1.1(b)(2)(B):   the scheme involved
     50 or more victims (namely, 136 victims)
     and thus there is a 4 level increase.

c.   §   2B1.1(b)(9)(C): the scheme involved
     sophisticated means and thus there  is a
     2 level increase.

10.   The government and the defendant agree that the following specific offense characteristics do not apply:

> a.   the 2 level increase pursuant to Guidelines § 2B1.1(b)(8)(A) (misrepresentation that the defendant was acting on behalf of a charitable agency).

## U.S.S.G. CHAPTER 3 ADJUSTMENTS

11.   The government and the defendant agree that the following adjustment to the base offense level do apply:

> a.   The 2 level upward adjustment of Guidelines § 3B1.3 (abuse of trust/special skill).
>
> b.   the 2 level increase pursuant to Guidelines §3A1.1(b)(2)(B) (vulnerable victim).

## ADJUSTED OFFENSE LEVEL

12.   Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offenses of conviction is 29.

## ACCEPTANCE OF RESPONSIBILITY

13.   At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility)

and further agrees to move the Court to apply the additional one
(1) level downward adjustment of Guidelines § 3E1.1(b), which
would result in a total offense level of **26**.

## CRIMINAL HISTORY CATEGORY

14.   It is the understanding of the government and the
defendant that the defendant's criminal history category is **I**.
The defendant understands that if the defendant is sentenced for,
or convicted of, any other charges prior to sentencing in this
action the defendant's criminal history category may increase.
The defendant understands that the defendant has no right to
withdraw the pleas of guilty based on the Court's determination of
the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

15.   It is the understanding of the government and the
defendant that, with a total offense level of **26** and criminal
history category of **I**, and taking into account the applicable
statutory minimum penalties, the defendant's sentencing range
would be a term of imprisonment of **63 to 78 months**, a fine of
$12,500 to $125,000, and a period of supervised release of 2 to 3
years.   Notwithstanding this, the defendant understands that at
sentencing the defendant is subject to the minimum and maximum
penalties set forth in paragraph 1 of this agreement.

16. The government and the defendant agree to correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

17. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

18. In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense involving or related to mail fraud and/or theft

of public funds, which is not time barred as of the date of this agreement.  This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.


## V.  GOVERNMENT RIGHTS AND RESERVATIONS

19.  The defendant understands that the government has reserved the right to:

    a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

    b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

    c.    advocate for a specific sentence, including the amount of restitution;

    d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information regarding the recommendation or factor;

    e.    oppose any sentence outside the Guidelines range made by the defendant.

20. At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 11-M-45.

21. The government agrees that the defendant will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to mail fraud and theft of public funds resulting from her employment at Homefront, Inc., committed up to the date of this agreement and about which the defendant has informed the government prior to signing this agreement.

22. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

23. The defendant understands and agrees that the Court at, the time of sentencing, may order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately

and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

## VI.   APPEAL RIGHTS

24.   The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 15, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section I of this agreement.

25.   The defendant understands that by agreeing to not collaterally attack the sentence, the defendant is waiving the

right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

26.   The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 15, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII.   CIVIL ACTION

27.   Defendant waives and agrees not to assert in any civil lawsuit arising from the conduct which gave rise to the criminal charges that are the subject of this plea any defense based on the double jeopardy or excessive fines clauses of the Constitution.

## VIII.   TOTAL AGREEMENT AND AFFIRMATIONS

28.   This plea agreement represents the total agreement between the defendant, LORI MACAKANJA, and the government.   There are no promises made by anyone other than those contained in this agreement.   This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

WILLIAM J. HOCHUL JR.
United States Attorney
Western District of New York

BY: _____
TRINI E. ROSS
Assistant U.S. Attorney

Dated: October ____, 2011

I have read this agreement, which consists of 15 pages.  I have had a full opportunity to discuss this agreement with my attorney, Brian Comerford, Esq.  I agree that it represents the total agreement reached between myself and the government.  No promises or representations have been made to me other than what is contained in this agreement.  I understand all of the consequences of my plea of guilty.  I fully agree with the contents of this agreement.  I am signing this agreement voluntarily and of my own free will.


_____
LORI MACAKANJA
Defendant

Dated: October _6_, 2011


_____
BRIAN COMERFORD, AFPD
Attorney for the Defendant

Dated: October _6_, 2011

-15-